Moncure, J.
Otey Kinsey sued out a ca. sa. against Henry Shoemaker; who being arrested and committed to jail, gave a forthcoming bond with the appellant Moses G. Booth and the same Otey Kinsey, the obligee in the bond, as his sureties. A motion was made by Kinsey against Shoemaker and Booth, the other two obligors, for award of execution on the bond; and it was proved that in due time a written notice of the motion addressed to Shoemaker and Booth, and full *561 and specific in all respects, except that the name of Kinsey was not mentioned as a co-obligor in the bond, had been served on Booth, and a verbal notice of the motion had been given to Shoemaker. And it was admitted on both sides, that the Otey Kinsey whose name was signed to the bond as an obligor, was the same person who was the obligee in the bond; and it was proved on the part of the defendants that Shoemaker had been discharged from custody under the ca. sa. by the execution of the bond aforesaid by Booth and Kinsey, without in fact having delivered up the property specified in the bond, or any other property whatever. The defendants opposed the motion on the grounds 1st, that there was a variance between the written notice and the bond; 2dly, that they had not received sufficient notice of the motion, and 3dly, because the plaintiff being a joint obligor with the defendants, could not legally recover judgment against them, and the bond was nugatory and void. But the Court being satisfied that there was no substantial variance between the written notice and the bond, and that both defendants had had legal notice of the motion; and being of opinion that the said bond was the bond of the defendants alone, and was not vitiated by the fact that the plaintiff also signed it; overruled the objections of the defendants and gave judgment against them. The defendants excepted, and obtained a supersedeas to the judgment.
In regard to the 1st and 2d objections I will only say, that I concur in the opinion of the Court below thereon, and think they were rightly overruled. In regard to the 3d, I have had much difficulty, and will have to express my opinion somewhat at length.
That a man cannot be both debtor and creditor at the same time is undoubtedly true, as applied to an individual in his own right, without any person associated with him, either on the debtor or creditor side. *562 There is an inherent impossibility in the thing ; and all instruments, whether in the form of specialties or simpie contracts, made for the purpose of producing these inconsistent characters of debtor and creditor in one an¿ t[je same person must of necessity be void. The defect in such cases is substantial and radical.
But a man, either severally or jointly with others, can be creditor or debtor to himself and others. This is of every day occurrence in cases of partnership, Avhere a member of a firm is creditor or debtor of the firm, or where the same person is a member of creditor and debtor partnerships. The same principle applies to other cases, for in every case of the kind there is a quasi partnership between the parties associated on either side, limited to the purposes of the contract; but just as effectual, quoad those purposes, as a full mercantile partnership would be.
That a man cannot be both plaintiff and defendant in the same suit at law, whether others be associated with him or not, is also true. But this is a technical, and not a substantial or radical defect. It applies to the remedy and not to the right; and may be obviated by resorting to a Court of equity, in which a man can be both plaintiff and defendant in the same suit; or by introducing a new party to the contract in whose name a suit at law may be brought without violating the technical ruleor by suing at law in such manner (if the form of the contract or the law will admit of it,) as not to exhibit the apparent inconsistency of making the same person both plaintiff and defendant.
Thus a bill of exchange or negotiable note payable by a firm to a member of it or order, becomes an available security at law in the hands of an endorsee, who may sue the drawer or maker as well as the endorser. It can hardly be necessary to cite authorities on this subject. The doctrine is stated and many of the cases cited in Smith v. Lusher, 5 Cow. R. 688.
*563 So also where a statute authorizes the assignee of a bond to sue in his own name, he may maintain a suit thereon at law, though the same person be both obligor and obligee in the bond. This was expressly and unanimously decided by the Supreme court of the United States in the case of Bradford v. Williams, 4 How. U. S. R. 576. There is a statute in Florida authorizing an assignment of bonds, and the assignee to sue at law in his own name, similar to our statute on the same subject. The Supreme court held under this statute, that where a joint and several bond was signed by three obligors and made payable to three obligees, one of whom was also one of the obligors; and the obligees assigned the bond, the fact that one of the obligors was also an obligee, was no valid defence in a suit brought by the assignee against one of the other obligors, and that the inability of one of the obligees to sue himself did not impair the vitality of the bond,, but amounted only to an objection to a recovery in a Court of law; and the assignment and ability of the assignee to sue in his own name removed this difficulty. There is no doubt but that if the case of Bradford v. Williams had gone up from this state, instead of Florida, the Supreme court would have decided the case under our statute in the same way, for our statute goes at least as far in favour of the assignee of a bond as does the statute of Florida.
So also when the bond is joint and several, and the obligee is one of the obligors; he may, I think, maintain an action at law in his own name against one of the other obligors. The principle of the decision of Bradford v. Williams, seems to apply to the case; for it may be here said, as was in effect said by the Court in that case, that the inability of the obligee to sue himself does not impair the vitality of the bond, but amounts only to an objection to a recovery in a Court of law; and as the assignment and ability of the assig *564 nee to sue in his own name removed the difficulty in that case, so here the ability of the obligee to sue one of the other obligors in his own name, in like manner removes the difficulty. In that case it was unnecessary to decide this particular question, because the suit was brought in the name of the assignee; and the case, in the opinion of the Court, fell within the principle of the case of a partner drawing a bill upon his own firm or making a note in the name of the firm, payable to his own order; both of which are valid in the hands of a bona fide holder. But it is manifest that if it had been necessary to decide this particular question in that case, the Court would have decided it in favour of the right of the obligee to sue. For Mr. Justice Nelson, in delivering the opinion of the Court, said: “ Whether the obligees of the bonds in question could have maintained an action at law against the defendant, is a question we need not determine ; though it is not easy to perceive the force of the objection urged against it, namely, that Craig one of the coobligors is also an obligee. The bond is joint and several, and the suit against Judge, one of the obligors; and if it had been brought in the name of the obligees, Craig would not have been a party plaintiff and defendant, which creates the technical difficulty in maintaining the action at law. It would have been otherwise if the obligation had been joint and not several; for then the suit must have been brought jointly against all the obligors.”
An action at common law on a joint and several bond must be against one or all of the obligors, and not an intermediate number of them. It cannot be against all of them where the obligee is also one of the obligors, for then the same person would be both plaintiff and defendant in the same suit at law. And if it were brought against the other obligors, the fact that the obligee was one of the obligors might, it seems, be *565 plead in bar of the action; and indeed could not be plead in abatement, as in other cases of non-joinder of defendants; “ because a plea in abatement ought to give a better writ, not to shew that the plaintiff can have no action at all,” as he caunot in such case have against all of the obligors. Mainwaring v. Newman, 2 Bos. & Pul. 120. The rule that an action cannot be maintained against an intermediate number of joint and several obligors, does not apply to a motion on a forthcoming bond ; the statute authorizing execution thereon to be awarded “against the obligor, or obligors, or any of them:” And this it seems may be done even where the notice is against all of them. Glassel v. Delima, 2 Call 368. It seems to follow, therefore, on principles before stated, that where the obligee in a forthcoming bond is one of the obligors he may maintain a motion on the bond against the other obligors. In the case under consideration the notice, motion and judgment were all against the other obligors only.
There are several decisions of the Supreme court of North Carolina which assume the position, that whenever the same person is an obligor and an obligee in the same bond it is void, and no action can be maintained upon it against any of the obligors, whether the bond be joint, or joint and several. I have very high respect for the Court by which these decisions were made, but think the position assumed in them is not sustained by reason or authority. They were made about the same time, and rest upon each other. In only one of them, and that the fourth of the series, was it necessary to decide the question, as the decisions were sufficiently sustained by other grounds. The only English case cited in support of the position is the case of Mainwaring v. Newman, 2 Bos. & Pul. 120, in which the contract was joint only, and it was necessary therefore that the action should be joint. That too was the case of a negotiable note executed to a firm by a member of it; *566 which was certainly not void, and would have been actionable at law in the name of an endorsee who was not also a defendant. I really do not see on what principle it can be said that the whole bond is void merely because one of the obligors is also the obligee. There might be some reason for saying, though 1 do not admit, but deny it, that the bond is void as to the obligor who is obligee, and good as to the other obligors only, on the principle that where a feme covert or other person incompetent to make a contract signs a bond as one of the obligors, it is void only as to her; or that where a partner executes a bond in the name of the firm it is good as to him and the other obligors, and void only as to the partners who do not execute the bond. But why should a person who is competent to bind himself, and does bind himself, by the execution of a bond, be allowed to avoid the bond merely because it is also executed by a person who cannot be sued at law on the bond ? It is admitted by Ruffin, Judge, in one of the North Carolina cases, 3 Dev. R. 290, that the coverture or other personal incapacity of one of the obligors, does not affect the other obligors who are able to contract; and that the latter are bound as if they alone had executed the bond. Why are they not, a fortiori, bound where they execute the bond with another who is capable of contracting, but cannot be sued at law on the bond because he is also an obligee in the same bond ? The reason given by the Judge for their not being bound in the latter case is, that “ the parties intended to have contribution” and “ it never could have been intended that one of the persons who sealed the instrument should alone pay to the other the money mentioned in it. And because it cannot be enforced without that construction it must be taken to be void altogether.” Now this reason applies with great force to the former, but litte or none to the latter case. Where one of the obligors is a feme covert, or otherwise incompetent, it is *567 evident that the other obligors intended to have contri- , . , . ° , . bution; and yet certain they can never have it in any form of action, or in any forum. Where one of the .i- , , _ . , ,. obligors, though competent, yet happens to be an obugee, it is also evident that the other obligors “ intended to have contribution,” and it must be admitted on all hands they can have it by suit at law or in equity. In the former case the other obligors altogether lose the contribution intended. In the latter it could at most be only postponed; and even the evil of postponement would in many cases be avoided by allowing an assignee to bring an action at law in his own name against all the obligors. Another reason given by the learned Judge is, that “ there can be no delivery to an obligee by himself; nor by one obligor to another obligor.” This is a strictly technical reason, and ought to be sustained by good authority, but none is cited for the purpose. I do not see why there should be any difference between a bond and promissory note in this respect. A man is incapable of contracting with himself, whether by bond or simple contract. In this respect there is no difference between the two forms of contracting. The incapacity results from the inherent impossibility of the thing itself; not from any thing in the nature or dignity of the form of the contract. Though delivery be necessary to make a good deed, yet almost any act or word shewing an intention to deliver, is sufficient for the purpose. But suppose it were universally true that “ there can be no delivery to an obligee by himself; nor by one obligor to another obligor;” would it not follow, as a necessary consequence, that a bond ineffectually executed by one party would not be void as to other parties who had effectually executed it ? Suppose a bond effectually executed by one obligor is merely signed by another person; would it not be the bond of the former, though not of the latter? Suppose it is signed and sealed but not delivered by the latter, would it not still *568 be the bond of the former ? And would the fact that from the character of the parties there could not be a delivery by the latter make any difference ?
But these North Carolina cases were cited and relied on jn ¿]le argument of the case of Bradford v. Williams, 4 How. U. S. R. 576, decided in 1846, and yet the Supreme court made the decision and expressed the opinion before mentioned. I think that decision and opinion are unopposed by authority; are reasonable ; and tend to the promotion of justice. I am therefore disposed to follow them.
Pothier on Obligations has been referred to by the counsel for the appellant; but in looking to the references to that work, I see .nothing which is opposed to the view I have expressed. 1st, as to the right of a surety to substitution. That right is not affected by the view I take of the case. According to that view a surety would have the same right of contribution against a co-surety who is also an obligee, as against any other co-surety. 2dly, as to the effect of a release of one of the obligors. According to Pothier there are two kinds of release, one called “a real’release,” the other a “personal discharge.” A real release is where the creditor declares that he considers the debt as acquitted, it is equivalent to a payment, and renders the thing no longer due ; “ consequently it liberates all the debtors of it as there can be no debtors without something due.” A personal release merely discharges the debtor from his obligation, and extinguishes the debt indirectly where the debtor to whom it is granted was the sole principal, because there can be no debt without a debtor.” “ But if there are two or more debtors in solido, a discharge to one of them does not extinguish the debt; it only liberates the person to whom it is given and not his co-debtor ; the debt is extinguished however as to the part of the person to whom the discharge was given, and the other only remains obliged for the remainder.” *569 Pothier, p. 111, ch. 3, art. 11, § 1 and 11. Now if the case of one of the obligors being also an obligee, is analogous to either of the releases described by Pothier, it is that called a< personal discharge. 3dly, as to the effect of “ confusion,” which, in its application to this case, “ is the concurrence of the characters of creditor and debtor of the same debt in the same person,” whereby the two characters are mutually destroyed. It is answer enough to say, in the language of Pothier, that “ in order to induce a confusion of the debt, the characters not only of debtor and creditor, but of sole debtor and sole creditor, must concur in the same person ;” and that “ if a creditor of the whole becomes heir of the debtor for part, the confusion only takes place with respect to that part.” Id. p. 111, ch. 5. In most countries complete justice may be done by one and the same Court in one and the same suit; so that in a case of partial personal “ release” or “ confusion,” the obligation of the debtors as thereby modified, can at once be enforced without difficulty. But where the difference exists, as with us, between law and equity, and common law and chancery Courts, the strict and technical rules of the common law sometimes prevent the common law Courts from doing complete justice, or even justice at all; and a resort to a Court of chancery becomes necessary. By one of those rules we have seen that the same person cannot be both plaintiff and defendant in the same suit; so that wherever the form of the contract is such as to render it necessary in a suit thereon to make the same person both plaintiff and defendant, a Court of common law can take no cognizance of the case whatever may be the rights and obligations of the parties; and resort must be had at once to a Court of chancery. By another of those rules it would seem that a Court of common law must enforce the obligation of the debtors, if at all, in its original form, and not as modified by a partial “ release” or *570 “ confusion.” So that wherever in such case the form ¿ . . or state ox the contract is such as that a suit may be brought thereon without making the same person both plaintiff and defendant, a Court of common law though may take c0gnjzance 0f the case¡ cannot do complete justice in it; but must render judgment for the whole amount of the obligation, leaving the debtors to resort for ultimate relief to a Court of chancery ; or to a subsequent motion to the Court of law as hereinafter mentioned.
So much for the law of this case; and though there may be some doubt about the law, there can, I think, be none about the justice of the case. It is not pretended by Moses G. Booth that his signature to the bond was obtained by fraud, or that he signed it by mistake, or did not understand it. If he had had any meritorious defence he would have relied upon it, and not have relied alone on the defences of variance between the notice and bond, and insufficiency of notice, and the technical objection that the obligee in the bond was also a co-obligor. He% intended when he signed the bond to incur the obligation which it plainly imports. He intended to be bound jointly with his coobligors, and severally, for the forthcoming of the property therein mentioned on the day of sale. The bond has been forfeited. Shall he be released from his obligation, or shall he be compelled to perform it ? If his obligation can be enforced according to his intention, and consistently with the rules of law, it is our duty to enforce it. It can be enforced according to his intention. He intended to be bound precisely as if some other person, instead of Otey Kinsey, had signed the bond as co-surety with him. Suppose that had been the case, a judgment could then have been recovered against him severally; or against him and the principal jointly, as has been actually done in this case : and on payment of the debt he could have recovered one half *571 of the amount by motion against his co-surety. Are not his rights and obligations precisely the same in the case that has occurred, with this single exception’; which makes this case more favourable to him; that his co-surety being also obligee, he would not be required to go through the form of paying the whole debt to the obligee to recover one half of it back from him; but, if the debt cannot be made of the principal obligee, will be relieved on motion by paying one half of it into Court. Of what injustice then can he complain if his obligation be enforced precisely according to his intention ? But look at the other side; and see what injustice may be done to the obligee by declaring the bond to be void. It was insisted by the defendants, the principal obligor and surety Booth, by their counsel, on the trial of the motion in the Court below, not only that the bond was void, but that the plaintiff had by his own act discharged the principal obligor from custody under the ca. sa., and thereby released him from all liability for the debt. Suppose the bond be declared void, then the debt has either been altogether released, as insisted by defendants’ counsel, or the obligee will lose the benefit of the forthcoming bond, will be subjected to the expense and delay of the proceedings in the Court below and this Court; and will have to sue out a new execution on his judgment. And all this against the express obligation of the defendants incurred with their eyes open and on valuable consideration; and when the obligee has acted in good faith, and has performed his part of the contract! The obligee had the body of his debtor in custody for the debt. The appellant was willing to become the surety of the debtor if another person would become co-surety. The obligee was himself willing to become such co-surety. And accordingly, the forthcoming bond was executed and the debtor was discharged from custody. Here was a valuable consideration moving from the obligee, whose conduct in the *572 transaction, in that view of it, was not only blameless but meritorious. Indulgence to the debtor may have formed a further consideration; for the bond bears date in January 1844, whilst the notice bears date in September 1845, about eighteen months thereafter. This is the case which the record seems to present; and these are the consequences which would result from a reversal of the judgment. The law should be plainly written, which would require us to encounter consequences like these. If there be any such law it can only be the technical rule that a person cannot be obligor and obligee in the same bond, or plaintiff and defendant in the same suit. I do not think that rule requires it ; and I am therefore for affirming the judgment; though I do not concur in the opinion expressed by the Court below that the bond “is the bond of the defendants alone.” I think it is the bond of all the persons whose names are thereto signed as obligors; and that Kinsey is equally bound for contribution as co-surety with Booth, unless such obligation, which the bond imports, was varied by an express agreement between them ; and that the obligation of Kinsey whatever it may be,'may be enforced by a Court of equity, or by motion to the Court which rendered the judgment.
Daniel, J.
The third reason or cause for reversing the judgment assigned by the plaintiff in error in his petition for an appeal, viz., that the bond is void because of the fact that Kinsey who is the obligee is also one of the obligors, is, upon a first view of the case, apparently very strongly favoured by the decisions of the Supreme court of North Carolina in the cases of Justices v. Dozier, and Justices v. Bonner, 8 Dev. R. 287, 288.
In each of these cases the bond of a guardian payable to the justices of a county was declared void, on the ground that some of the obligees were also obligors *573 in the bond ; and the general principle was then asserted that, in all cases of joint bonds or of bonds joint and several, where one of the parties occupies the double relation of obligor and obligee, the instruments are at law wholly void. The soundness of this principle, however, as extended to the cases of joint and several bonds, is denied by Justice Nelson in delivering the opinion of the Supreme court of the United States in the case of Bradford v. Williams, 4 How. U. S. R. 476, and the counter opinion expressed, that when the bond is joint and several, the fact that one of the obligors is also an obligee, does not render the bond wholly void; or stand in the way of a recovery against any one of the obligors who is not also an obligee.
In accordance with the latter opinion is that of the Supreme court of Kentucky as announced in the case of Daniel v. Crooks, 3 Dana’s R. 64. It appears from the statement of that case as given by Marshall, Judge, in delivering the opinion of the Court, that the appellant had entered into a bond with Magowan as security, payable to Stockton and many others, stockholders of the Mount Sterling Bank. The appellee was one of the obligees, and the appellant and his security, the obligors, were also among the obligees. The condition of the bond recited that the appellant, the principal obligor, had undertaken to settle up the business of the bank, to pay its debts to individuals, and to redeem the stock at one hundred dollars per share. To enable him to do which he was to have all the debts and property of the bank in his own right; and on performing the condition the bond was to be void. The appeal was from a decree rendered against the principal in the bond alone in a suit in chancery brought by the appellee, to compel him to redeem certain shares of the stock held by the appellee: and the case turned upon the question whether the Chancellor had properly taken jurisdiction. The Supreme court held that he had not. Judge Mar *574 shall in delivering the opinion said that the jurisdiction was asserted only on the ground that in consequence of the obligors being also obligees, the bond was either not obligatory at all, or if obligatory would not sustain an actjon at ¡aw jn which the defendants would also be plaintiffs. The suit, he said, had been entertained and the decree founded on the idea that the bond was not obligatory: that the Chancellor had proceeded on the ground that the security was to be considered as being entirely discharged from liability for the principal’s performance of the condition; and on the further ground that the principal was to be held liable, not by force of his bond, but of the fact that he had acquired all the property of the bank and was therefore bound to pay the stockholders. For this idea he said there was no foundation; that whatever difficulties there might be in maintaining an action at law on those stipulations, in the performance of which the stockholders as a body were interested, the stipulation for the redemption of the stock was one for the breach of which in relation to himself, each obligee towards whom there could be a breach, had an easy and perfect remedy at law by a separate action of covenant: And the decree was reversed and the bill dismissed for want of jurisdiction in the Chancellor.
The reasons given by the Supreme court of North Carolina in Justices v. Dozier and Justices v. Bonner, before cited, for asserting the nullity of the bonds in those cases; are mainly of a technical character, and have, it seems to me, very little application to the case before us, when they come to be considered in connection with the peculiar nature of a delivery bond, the manner in which it is taken, the remedies upon it, and the statutory provisions for the summary relief of sureties against their principals and co-sureties.
Those reasons are briefly, first, that the bonds cannot be enforced without naming some of the parties both *575 as plaintiffs and defendants. Secondly, that there can be no delivery to an obligee by himself, nor by one obligor to another obligor. And, thirdly, that inasmuch as the bond for these reasons must be held naught as to those who are both obligors and obligees, it ought to be declared void in toto; as otherwise the intention of the parties to the contract would be violated: For that the sureties must have intended to have contribution ; that it could not have been intended that one of the persons who sealed the instrument should alone pay to the other the money mentioned in it; and because it could not be enforced without that construction it should be taken to be void altogether.
The delivery bond here taken is in pursuance of the laws authorizing a debtor under the service of a ca. sa. to tender to the sheriff property in discharge of his person, and then, if he chooses to do so, to give bond with security, payable to the creditor, for the forthcoming of the property at the day appointed by the sheriff for its sale. If the bond is forfeited by a failure of the debtor to deliver the property according to the condition, the law requires the sheriff to return the bond to the office of the clerk of the Court from whence the execution issued, to be there safely kept and to have the force of a judgment. And the Court, to whose office the bond is returned, is authorized upon motion, on ten days notice, to award execution thereupon for principal, interest and costs against the obligor or obligors, or any of them, in behalf of the obligee or obligees. p
It will be seen that whilst the statute requires the bond to be made payable to the creditor, a delivery to him is by no means essential to its validity. On the contrary the sheriff is required to return the bond to the clerk’s office; and in the case of Eppes’ ex’ors v. Colley, 2 Munf. 523, the objection was taken (though overruled by this Court) that the sheriff before notice of the motion was given, had delivered the bond to the *576 creditor instead of returning it to the clerk’s office according to the act. And in the case of Turnbull, ex’or v. Claibornes, 3 Leigh 392, the forthcoming bond was held to be good though taken after the death of cre(Jitor the execution, to whom it was made payable. No question about the delivery therefore can arise here, out of the fact that Kinsey who is the obligee is also one of the sureties.
The bond is a joint and several bond, and it will be seen also from the above recital of the provisions of the law that the obligee is authorized to proceed against “any of the obligors.” If therefore some other person than Kinsey had been the third obligor to the bond, Shoemaker and Booth would have had no right to complain that the proceedings were against those two alone. It is consequently difficult to perceive how they are injuriously affected in this particular by the incapacity of the third obligor (Kinsey) to be united with them. In obtaining a judgment against Shoemaker aud Booth alone, Kinsey has done no more than he would have had a perfect right under the statute to do, no matter how many other obligors there might have been in the bond; and in his proceedings no party has been placed on the record in the attitude of both plaintiff and defendant.
The technical difficulties with respect to the delivery of the bond and the form of the proceeding upon it being thus obviated, I do not see why the judgment upon it was not prbper; nor why Booth might not proceed to redress himself by the surety’s summary proceeding under the statute, either against the principal in the bond or against his co-surety who is Kinsey, as the circumstances of the case may require, exactly as he would or might have proceeded, had some other person than Kinsey been the other surety.
In this aspect of the case no injustice is done to any one. Booth’s liabilities as a surety are in no respect *577 either enhanced or diminished, and Kinsey certainly cannot complain that full efficacy is given to the bond by treating him as, what he has represented himself in the bond to be, a co-surety with Booth.
The laws in regard to delivery bonds have been made in ease, and for the relief, of debtors, and this Court has been constant in refusing to permit any slight irregularities, either in the form of the bonds or in the mode of proceeding on them, to stand in the way of a prompt recovery upon them by the creditor. And I think that we can in this case, enforce what may be fairly supposed to be the true intention of the parties without encountering any legal absurdity or doing violence to any of the forms of pleading, in proceeding to a judgment on the bond. Concurring therefore as I do with the Judge of the Circuit court that the notice was regular and that there is no variance between it and the bond, and that a judgment could be rendered upon it against Shoemaker and Booth, I am for affirming his judgment against them.
I think however that Booth may legally treat Kinsey as a co-surety, and may, by proceedings in equity or by motion in the Circuit court upon proving the insolvency of Shoemaker, be relieved by paying one half of the debt.
Allen, J. concurred in the opinions of Moncure and Daniel, J’s.
The following was the entry:
The Court is of opinion, that there is no error in the judgment of the Circuit court; and the same is therefore affirmed with costs. The Court is however, also further of opinion, that it is competent for the plaintiff in error Booth, to treat the defendant in error Kinsey, as a co-surety in the forthcoming bond in the proceedings and judgment mentioned; and in the event of the *578 insolvency of the principal, to proceed, either by bill in equity, or by motion before the said Circuit court, under the provisions of the act 1 Eev. Code 460, for the relief of securities, to obtain against said Kinsey such an or(jer for contribution as modified by the fact that the said Kinsey is also the obligee in the bond, will operate to discharge the said Booth from the judgment on payment of one half of the debt and costs. This judgment is therefore without prejudice to the right of the said Booth to pursue any steps he may be advised to take either at law or in equity for obtaining relief to the extent above indicated.